IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Shannon Ashford, | ) | C/A No.: 3:18-904-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND |
| Pricewaterhousecoopers, LLP, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

In this employment discrimination case, Shannon Ashford ("Plaintiff") sues her former employer, Pricewaterhousecoopers, LLP ("Defendant"), alleging (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and 42 U.S.C. § 1981; and (2) retaliation in violation of Title VII. [ECF No. 1-1]. This matter comes before the court on Defendant's motion to compel arbitration [ECF No. 7]. The motion having been fully briefed [ECF Nos. 10, 11], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.). Because the motion is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant in part Defendant's motion to compel arbitration.

I. Factual Background

Defendant hired Plaintiff in April 2015 as an Associate in the Service Delivery Center in Columbia, South Carolina. [ECF No. 1-1 at ¶ 6]. In October 2015, Plaintiff informed management of her concerns about discrimination. *Id.* at ¶ 9. In June 2016, Plaintiff was denied a promotion for which she was eligible. *Id.* at ¶ 10. She also believed her annual evaluation was inconsistent with her "performance, work product, or effort." *Id.* According to her complaint, "[b]ased on statements demeanor, and other observations, [she] became further concerned that she was being treated differently and negatively by her immediate management." *Id.* She applied for a "position/opportunity" in July 2016, but she alleges the position was given to a less-qualified white candidate. *Id.* at ¶ 11. In September 2016, she applied for another position, but states she did not receive an answer about the position. *Id.* at ¶ 12. Plaintiff was again denied promotions in March and June 2017. *Id.* at ¶¶ 13, 14.

According to Defendant, on March 9, 2015, prior to the commencement of Plaintiff's employment, it sent Plaintiff a letter setting forth the terms of the offer of employment (the "Offer Letter") and attaching a proposed employment agreement (the "Employment Agreement"), which incorporated a proposed arbitration agreement (the "Arbitration Agreement") as Exhibit A to the Employment Agreement. [ECF No. 7-2 at 5–20]. The Offer Letter stated:

> The terms of your employment are set forth in the Employment Agreement sent electronically with this letter. The Employment

> Agreement incorporates an Arbitration Agreement, under which **you and the Firm mutually waive the right to a trial before a judge or jury in court in favor of arbitration for all Covered Claims (as defined in the Arbitration Agreement)**. The Arbitration Agreement also requires that Covered Claims be arbitrated on an individual basis, and prohibits claims on a class, collective, consolidated or representative basis. You must sign the Employment Agreement, which includes the Arbitration Agreement, by following the instructions on the Decision Form sent with this letter, in order to accept our employment offer. The Employment Agreement will become effective on your first day of employment with the Firm.

[ECF No. 7-2 at 6 (emphasis in original)]. On March 11, 2015, Plaintiff electronically executed the Employment Agreement, which included the Arbitration Agreement. [ECF No. 7-2 at 16]. The Employment Agreement states:

> You and the Firm agree, as a condition precedent to your employment, to be bound by the terms of the arbitration agreement attached hereto as Exhibit A, which is incorporated herein by reference, and which requires both you and the Firm to submit to final and binding arbitration all claims covered under the arbitration agreement.

*Id.* at 13.

Plaintiff submitted an affidavit in which she states that upon being offered the job by telephone, she received a corporate link on the internet to complete paperwork. [ECF No. 10 at 3]. She does not believe that she received the Offer Letter independently from the documents included in the link, but cannot say "for certain that it was not in the package sent to [her]." *Id.* Plaintiff recalls accessing the link within a couple of days of the offer and recalls there were fifteen or more documents. *Id.* at ¶ 4. She recalls that some of the documents required her to type in her name and email address, while others did not. *Id.* She

states she was not advised whether she should read all of the documents. *Id.* Plaintiff further states that she attempted to read all the text, but cannot recall all of it. *Id.* at ¶ 5. Plaintiff does not recall a document entitled "Employment Agreement," which she believes she would have read, but she recalls that many of the documents were not clear to her. *Id.* Plaintiff does not "believe that [she] did see a clause waiving any rights," but is not sure that she would have understood the term "arbitration." *Id.* at ¶ 7. Plaintiff's affidavit further states: "The motion [to compel arbitration] appears to have an arbitration agreement that, again, I do not specifically recall seeing but, again, there were many, many documents." *Id.* at ¶ 8.

II. Discussion

  A. Legal Standard

Defendant moves to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA"), which provides in part that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[Q]uestions of arbitrability must be addressed with a healthy regard for the

federal policy favoring arbitration . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23–24 (1983).

"Motions to compel arbitration in which the parties dispute the validity of the arbitration agreement are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011); *Gordon v. TBC Retail Grp., Inc.*, No. 2:14-CV-03365-DCN, 2016 WL 4247738, at *6 (D.S.C. Aug. 11, 2016) (treating motion to compel arbitration in which the parties disputed the validity of the arbitration agreement as a motion for summary judgment). "Accordingly, arbitration should be compelled where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Erichsen v. RBC Capital Markets, LLC*, 883 F. Supp. 2d 562, 566–67 (E.D.N.C. 2012) (quoting Fed. R. Civ. P. 56). A trial is necessary if the material facts regarding the making of an agreement to arbitrate are in dispute. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).

To compel arbitration under the FAA, a litigant must demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the

5

dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991)).

Defendant argues Plaintiff must be compelled to arbitrate her claims based on the terms of the Arbitration Agreement. [ECF No. 9]. Defendant, as the party seeking to enforce the Arbitration Agreement, bears the initial burden of "persuading this court that the parties entered into an enforceable arbitration agreement." *Drake v. Mallard Creek Polymers, Inc.*, 2014 WL 7405762, at *1 (W.D.N.C. Dec. 30, 2014). If Defendant makes such a showing, then "the burden shifts to the plaintiff to show that even though there was some written contract, [she] did not actually agree to it—because the signature was forged, the terms of the contract were misrepresented, or some other reason evincing lack of true agreement." *Czopek v. TBC Retail Grp., Inc.*, 2014 WL 5782794, at *4 (M.D. Fla. Nov. 6, 2014). "When deciding whether the parties agreed to arbitrate a certain matter[,] courts [ ] should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Here, Defendant provided the signed Arbitration Agreement.

B. Analysis

1. Prima Facie Case

The parties agree that a dispute exists between them and that Plaintiff has refused or neglected to submit the dispute to arbitration. Defendant also demonstrated, and Plaintiff has not disputed, that her employment was related

6

to interstate commerce. [ECF No. 7-1 at 7–8]. Defendant has also provided evidence of a purported Employment Agreement containing an Arbitration Agreement, but Plaintiff appears to question its validity.

Defendants submitted the declaration of Carrie Levine, who provided Plaintiff's relevant personnel records and testified that Plaintiff executed the Employment Agreement and Arbitration Agreement. [ECF No. 7-2]. Defendant have produced a printout of the Agreements showing that Plaintiff "signed" the Agreement through an electronic system. [ECF No. 7-2 at 4–20].

"To establish that evidence is authentic, a proponent need only present 'evidence sufficient to support a finding that the matter in question is what the proponent claims.'" *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) (quoting Fed. R. Evid. 901(a)). "[T]he burden to authenticate under Rule 901 is not high—only a prima facie showing is required," and a "district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Id.* "A signature demonstrates that the signer intends to authenticate a document as her own act through the use of a mark." *Hamdi Halal Mkt. LLC v. United States*, 947 F. Supp. 2d 159, 164 (D. Mass. 2013). South Carolina has adopted the Uniform Electronic Transactions Act ("UETA"). *See* S.C. Code Ann. § 26-6-10, *et seq.* South Carolina's version of the UETA provides the following:

> An electronic record or electronic signature is attributable to a person if it is the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of a security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

S.C. Code Ann. § 26-6-90.

Some courts "have found the declaration of the human resource employees sufficient to authenticate electronic signatures." *Tagliabue v. J.C. Penney Corp., Inc.*, 2015 WL 8780577, at *2 (E.D. Cal. Dec. 15, 2015) (collecting cases). Other courts have focused on the factual circumstances surrounding the purported signature. *See Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 934 (S.D. Ohio 2014) (assessing security measures used to protect defendants' online system and finding employee's claim that her signature was not authentic failed to create a genuine issue of material fact).

The undersigned finds that Defendant has satisfied its burden of authenticating the proffered agreements. Defendant's submission of Levine's declaration attests to the records' authenticity for purposes of a prima facie showing.

Plaintiff has not provided sufficient evidence to meet her burden of overcoming Defendant's prima facie showing of a valid agreement. Although Plaintiff does not recall seeing, reading, or signing the Employment Agreement or the Arbitration Agreement, she admits that she signed many documents and does not recall them all. [ECF No. 10 at 34]. While Plaintiff stated that she

"attempted to read all the text," she does not attest that she read and recalls all of the documents. In the absence of a specific denial that she signed the documents or some evidence showing that her electronic signature was forged or misrepresented, Plaintiff has failed to show a dispute of material fact regarding her acceptance of the agreements.

2. Unconscionability

Plaintiff argues that "[f]orced arbitration in this situation would be unconscionable [from] both a procedural and substantive perspective." [ECF No. 10 at 1]. Because the Employment Agreement and Arbitration Agreement both state that they are governed by New York choice of law provisions, the undersigned has addressed the claims under both South Carolina and New York legal principles.

a. Title VII Claims

Plaintiff notes that the Arbitration Agreement appears to exclude Title VII claims from the definition of "Covered Claims." [ECF No. 10 at 2]. The Arbitration Agreement broadly defines "Covered Claims," but lists several enumerated exclusions from the definition of covered claims including: "Claims that arise under Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination on the basis of race, color, religion, sex and national origin, unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims." *Id.* at 17. Defendant provides the following in a

9

footnote in their brief:

> At the time the Arbitration Agreement was initially drafted, the Firm was subject to certain provisions of the Franken Amendment to the 2010 Department of Defense ("DoD") Appropriations Act (the "Act") regarding arbitration of employee claims, which prohibited the DoD from entering into non-commercial contracts in excess of $1 million with any employer that required its employees to arbitrate, inter alia, Title VII claims. 48 C.F.R. §§ 222.7402, 222.7403. Accordingly, the Arbitration Agreement excluded Title VII claims from "Covered Claims" subject to mandatory, binding arbitration, "unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims." (Levine Decl., Exh. C at 2, ¶ 1(d)(viii)). From the time Plaintiff's employment with PwC began through the present, however, PwC is no longer bound by the provisions of the Franken Amendment as it no longer performs the types of work that invoke the prohibition on mandatory arbitration. (Jack L. Johnson, Jr. Decl., ¶ 3, attached hereto as Exhibit 2). Therefore, since federal law no longer prohibits PwC from mandating arbitration of Title VII claims, those claims are subject to mandatory arbitration.

[ECF No. 7-1 at n.2]

### i. South Carolina Law

"In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668 (S.C. 2007). In determining whether the parties had meaningful choice, six factors are considered: "the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties'

relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause." *Id.* at 669.

Here, the majority of the factors weigh in favor of unconscionability as to Plaintiff's Title VII claims. Plaintiff's claims Defendant engaged in discriminatory conduct. Plaintiff is not a substantial business concern, is not sophisticated, and had less bargaining power than Defendant. The conspicuousness of the clause weighs in favor of Defendant, as Defendant noted in the Offer Agreement and the Employment Agreement that the Arbitration Agreement was a condition of employment. However, the undersigned finds that the most substantial factor in this case in determining whether the Arbitration Agreement is unconscionable is the element of surprise by the Arbitration Agreement. The Arbitration Agreement appears to exclude Title VII claims from its coverage. However, only upon an explanatory footnote and an attached affidavit could Plaintiff or the court determine that Defendant "is no longer bound by the provisions of the Franken Amendment as it no longer performs the types of work that invoke the prohibition on mandatory arbitration." [ECF No. 7-1 at n.2]. Defendant included this language in the Arbitration Agreement Plaintiff signed in March 2015, despite the fact that it has not been a party to the types of contracts that would subject it to such limitations on arbitration since April 2015. *See* Johnson Dec. at ¶3. Plaintiff would not be able to independently ascertain whether a Title VII claim was covered by the Arbitration Agreement on

11

the date she signed it, on the date it became effective, on the date she first knew of a potential Title VII claim, or any other date. Therefore, the undersigned finds that under South Carolina law, the Arbitration Agreement is unenforceable as unconscionable as to Title VII claims.

ii. New York Law

"Under New York law, a contract will be found unconscionable when it is 'so grossly unreasonable . . . in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Teah v. Macy's Inc.*, 11-CV-1356, 2011 WL 6838151, at *6 (E.D.N.Y. Dec. 29, 2011). In other words, a finding of unconscionability generally requires some showing of "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (internal quotation marks and citations omitted).

Substantive unconscionability addresses the content of the contract, and procedural unconscionability addresses the contract formation process and the lack of meaningful choice. *See Matter of Conifer Realty LLC (EnviroTech Servs., Inc.)*, 106 A.D.3d 1251, 964 N.Y.S.2d 735, 739 (N.Y. 2013). "Generally, there must be a showing that . . . a contract is both procedurally and substantively unconscionable" in order to preclude enforcement. *Ragone v. Atlantic Video at Manhattan Center,* 595 F.3d 115, 121 (2d. Cir. 2010); *Nayal v. HIP Network*

12

*Servs. IPA, Inc.*, 620 F.Supp.2d 566, 570 (S.D.N.Y. 2009) (same); *see also Teah*, 2011 WL 6838151, at *6 (articulating the same standard). However, "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Ragone*, 595 F.3d at 122.

The undersigned finds that the inability to independently determine whether Title VII claims were covered by the Arbitration Agreement is related to both the procedural and substantive unconscionability of the Arbitration Agreement. Plaintiff did not have a meaningful choice, as she was without the information to determine whether such claims were covered when she signed the Arbitration Agreement. However, the Arbitration Agreement was also substantively unconscionable, as it unreasonably favored Defendant as the sole party which could determine whether Title VII claims were covered on any given date. Therefore, the undersigned recommends the district judge find the Arbitration Agreement unenforceable as unconscionable as to Title VII claims under New York law.

    2.    Claim Pursuant to § 1981

Whether applying South Carolina or New York law, Plaintiff has not shown why the Arbitration Agreement is unconscionable as applied to her § 1981 claim. Although Plaintiff states that she was not advised as to whether to read the documents she was executing, "an elementary principle of contract law is

13

that a party signing a written contract has a duty to inform himself of its contents before executing it." *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001). While Plaintiff was less sophisticated and has less bargaining party than Defendant, the Arbitration Agreement was conspicuous and provided Plaintiff adequate notice that a potential § 1981 claim was covered by the Arbitration Agreement. Further, the terms of Arbitration Agreement were not one-sided and provide that Defendant "pay all costs unique to arbitration, including the cost of JAMS and the Arbitrator." [ECF No. 7-2 at 18]. Therefore, the undersigned recommends that the district judge find that the Defendant's motion to compel arbitration be granted as to Plaintiff's § 1981 claim.

      3.    Stay

The Fourth Circuit has held that if all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is "an appropriate remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Notwithstanding the inherent tension on this issue, *see Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) (noting that "[t]here may be some tension between our decision . . . indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and Choice Hotels—sanctioning dismissal 'when all of the issues presented . . . are arbitrable.'"), a district court must stay an action pending arbitration of any arbitrable claims, with the exception that it may instead dismiss an action if all

14

claims asserted are arbitrable. *See Weckesser v. Knight Enterprises S.E., LLC*, 228 F. Supp. 3d 561, 564 (D.S.C. 2017). Therefore, the undersigned recommends the district judge stay this case pending the mandatory arbitration of Plaintiff's § 1981 claim.

III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the district judge grant Defendant's motion as to Plaintiff's § 1981 claim and deny the motion as to Plaintiff's Title VII claims. The undersigned further recommends the district judge stay this case pending the mandatory arbitration of Plaintiff's § 1981 claim.

IT IS SO RECOMMENDED.

May 21, 2018
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).