# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| SHANNON ASHFORD, | ) |
| | ) Case No: 3:18-cv-00904-CMC-SVH |
| Plaintiff, | ) |
| | ) |
| v. | ) DEFENDANT'S OBJECTIONS TO THE |
| | ) MAGISTRATE'S REPORT AND |
| PRICEWATERHOUSECOOPERS, LLP, | ) RECOMMENDATION |
| | ) |
| Defendant. | ) |

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and the Court's Notice filed on May 22, 2018 (Doc. No. 12 at 16), Defendant PricewaterhouseCoopers, LLP ("PwC" or "Defendant") respectfully submits the following objections to the Report and Recommendation of Magistrate Judge Shiva V. Hodges (the "Recommendation").

## I.  INTRODUCTION

Plaintiff Shannon Ashford ("Plaintiff"), a former PwC employee, alleges that PwC discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). PwC moved to compel arbitration and dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16. Doc. No. 7.

As the Recommendation properly acknowledges, Plaintiff electronically executed an employment agreement with PwC that contained an arbitration agreement ("Arbitration Agreement"). *See* Doc. No. 12 at 6–9 ("Plaintiff has failed to show a dispute of material fact regarding her acceptance of the agreements."). The Arbitration Agreement broadly covers all "claims relating to or arising out of [the] employment agreement or termination of that agreement . . . or . . . separation from . . . employment," ("Covered Claims"). Arbitration Agreement, Doc. No. 7-2 at 1. The Recommendation correctly finds that the Arbitration

Agreement requires arbitration of Plaintiff's Section 1981 claims and determines that "Defendant's motion to compel arbitration [should] be granted as to Plaintiff's § 1981 claim." *Id.* at 13–14. The Recommendation, however, recommends against compelling arbitration of Plaintiff's parallel Title VII claims, instead finding that they should be stayed pending arbitration.[1]

The basis of the Recommendation's conclusion that Plaintiff should not be compelled to arbitrate her Title VII claims is a finding that a provision of the Arbitration Agreement addressing the arbitrability of Title VII claims is unconscionable. Specifically, the provision at issue (the "Title VII Exclusion") excludes Title VII claims from "Covered Claims" subject to mandatory, binding arbitration, but only "unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims." *Id.* at 9–10. The Title VII Exclusion was designed to address the Franken Amendment, a provision of federal law that bars certain federal defense contractors from enforcing pre-dispute arbitration claims with employees regarding Title VII and certain other claims. At one time, PwC was a covered federal defense contractor subject to the Franken Amendment, and the language was designed to reflect that fact and to

---

[1] Notably, Plaintiff's Section 1981 and Title VII claims arise out of the same set of facts and theories. Both depend on factual claims that: Plaintiff applied for positions "for which she was well qualified," Doc. No. 1-1, ¶¶ 11, 12; a job she applied for went to "a less qualified white candidate," *id.* at ¶ 11; she was "the most qualified candidate by experience and education" for one of the jobs, *id.* at ¶ 13; and she continues to be denied jobs and promotions "for which she was well qualified and lost the positions to less qualified white employees, *id.* at ¶ 17. Accordingly, the arbitration's factual findings and attendant legal conclusions with respect to Plaintiff's Section 1981 claim will have a preclusive effect with respect to the Title VII claims that Plaintiff pursues in this Court after the stay has been lifted. *See Commonwealth Ins. Co. v. Thomas A. Greene & Co.*, 709 F. Supp. 86, 88 (S.D.N.Y. 1989) ("Collateral estoppel applies as well to arbitration awards as to judicial adjudications, and thus may bar the relitigation of an issue decided at an arbitration.") (citations omitted); *Rozewski v. Trautmann*, 151 A.D.3d 1945, 1946 (N.Y. App. Div. 2017) (noting that "[t]he doctrine of collateral estoppel may be invoked based upon an arbitration award" and concluding that plaintiff was collaterally estopped form litigating the question of whether his injury was casually related to defendant's conduct because he "had a full and fair opportunity" to do so in the arbitration).

accommodate future scenarios in which either PwC no longer held covered federal defense contracts or the Franken Amendment was no longer in force. As PwC explained in its motion to compel arbitration, however, "[f]rom the time Plaintiff's employment with PwC began through the present . . . PwC is no longer bound by the provisions of the Franken Amendment as it no longer performs the types of work that invoke the prohibition on mandatory arbitration." Doc. No. 7-1 at 3 n.2. Plaintiff did not respond to PwC's assertion that PwC was not subject to the Franken Amendment's restrictions on arbitration agreements during the entire time that Plaintiff worked at PwC and therefore has conceded the point. *See, e.g.*, *AT & T Corp. v. Syniverse Techs., Inc.*, No. 12 CIV. 1812 NRB, 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (holding that plaintiff conceded a point by failing to address it in its opposition brief); *Campbell v. Rite Aid Corp.*, No. 7:13-CV-02638-BHH, 2014 WL 3868008, at *2 (D.S.C. Aug. 5, 2014) ("Plaintiff failed to respond to Rite Aid's argument regarding causes of action 1 and 2, and the Court can only assume that Plaintiff concedes the argument."). Because the Title VII Exclusion is inapplicable, Plaintiff's Title VII claims are Covered Claims that Plaintiff should be compelled to arbitrate. To the extent there is any doubt about whether Plaintiff's Title VII claims are subject to arbitration, that doubt must be resolved in favor of requiring the Title VII claims to be arbitrated. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

The Recommendation wrongly concludes, however, that Plaintiff's Title VII claims are not subject to arbitration on the basis that the Title VII Exclusion is unconscionable. This finding is erroneous for three reasons: *first*, the Recommendation erroneously concludes that the Arbitration Agreement is substantively unconscionable; *second*, the Recommendation incorrectly concludes that the Arbitration Agreement is procedurally unconscionable; and *third*, the Recommendation fails to give adequate weight to the liberal federal policy favoring arbitration. Finally, even if the Arbitration Agreement were unconscionable—which it is not—the proper

remedy would be to excise the Title VII Exclusion, not to refuse to compel arbitration of the Title VII claims.

## II. STANDARD OF REVIEW

When a party properly files objections, the Court is "charged with making a de novo determination of those portions of the Report to which specific objection is made." *Joe v. Sec. Fin. Corp. of S.C.*, No. CA 0:14-159-CMC-SVH, 2014 WL 2094978, at *1 (D.S.C. May 20, 2014) (declining to adopt magistrate judge's Report and Recommendation and granting defendant's motion to compel arbitration). On review, the Court "may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions." *Id.* (citing 28 U.S.C. § 636(b)(1)); *see also* Fed. R. Civ. P. 72(b)(3).

## III. APPLICABLE LAW

New York law governs the enforceability of the Arbitration Agreement. The Recommendation acknowledges that the Arbitration Agreement contains a choice-of-law provision selecting New York law to govern the agreement, but does not determine which jurisdiction's law governs the present issues, instead "address[ing] the claims under both South Carolina and New York legal principles." Doc. No. 12 at 9. The New York choice-of-law provision is enforceable and requires application of New York's contract principles, to the extent the FAA does not apply.

Where a court's jurisdiction is based on federal question jurisdiction, federal courts look to federal choice-of-law principles to determine the enforceability of a contractual choice-of-law provision. *See, e.g.*, *Snow v. Citibank, N.A.*, No. 5:14-CV-59-FL, 2015 WL 799543, at *5 (E.D.N.C. Feb. 25, 2015) ("Where, as here, jurisdiction is based on federal question, courts apply federal common law, which [generally] honors the parties' choice of law . . . ."); *X-It Prods.*,

*LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 522–23 (E.D. Va. 2002) ("In federal question cases, the federal choice of law rules apply."). Under federal law, "the Supreme Court has consistently accorded . . . choice of law provisions presumptive validity," but the presumption "may be overcome by a clear showing that [the clause is] unreasonable under the circumstances." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (internal quotation marks omitted). A choice-of-law clause may be found unreasonable if (1) its "formation was induced by fraud or overreaching"; (2) "the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy"; or (3) its enforcement "would contravene a strong public policy of the forum state." *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

Plaintiff has not alleged that the choice-of-law clause was the product of fraud or overreaching. As the Recommendation acknowledges, Plaintiff has not made a "specific denial that she signed the documents" and has produced no "evidence showing that her electronic signature was forged or misrepresented." Doc. No. 12 at 9. Nor would the application of New York law deny her a remedy. New York law would apply to the question of whether the arbitration agreement is unconscionable, but both New York and South Carolina law allow for an agreement to be set aside if found unconscionable.

Finally, the application of New York law would not result in a violation of South Carolina public policy given the similarities between South Carolina's and New York's standards for unconscionability. *Compare Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 2009) (Under New York law, "[a] contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.") (quotation marks omitted) *with Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668 (S.C. 2007) ("In South

5

Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them."); *see also State of N.Y. v. Gen. Motors Corp.*, 120 Misc. 2d 371, 375 (N.Y. Sup. Ct. 1983) ("[A] clause will be found to be unconscionable if it is one which no person in his right senses would make and which no honest or fair man would accept."). Indeed, the Recommendation reaches the same conclusion—albeit the wrong one—regarding unconscionability under both South Carolina and New York laws. Doc. No. 12 at 10–13.[2]

Accordingly, the Arbitration Agreement's New York choice-of-law provision should be honored and New York law should govern the arbitrability of Plaintiff's Title VII claims.

## IV. <u>OBJECTIONS</u>

The Recommendation's conclusion that the Arbitration Agreement is unenforceable with

---

[2] Even if South Carolina law governed the analysis of the enforceability of the Arbitration Agreement's choice-of-law provision, the result would be the same. "South Carolina law looks favorably on choice of law clauses and enforces them except in unusual circumstances," such as where "'application of foreign law results in a violation of South Carolina public policy.'" *Synthes USA, LLC v. Davis*, No. 4:17-CV-02879-RBH, 2017 WL 5972705, at *4–5 (D.S.C. Dec. 1, 2017) (quoting *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007)); *see also Charleston Marine Containers Inc. v. Sherwin-Williams Co.*, 165 F. Supp. 3d 457, 468 (D.S.C. 2016) ("South Carolina generally respects choice of law provisions . . . ."); *Madison Capital Co. v. Miller*, C.A. No. 2:08-CV-1563-PMD, 2009 WL 3065205, at *2 (D.S.C. Sept. 22, 2009, *aff'd*, 432 F. App'x 228 (4th Cir. 2011) (enforcing New York choice-of-law provision found in loan and guaranty agreement); *Lybrand v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 467 S.E.2d 745, 747 (S.C. Ct. App. 1996) (in suit filed in South Carolina state court but referred to arbitration, noting that arbitration panel "was required to apply New York substantive law in adjudicating any controversy arising out of the agreement . . . [p]ursuant to the choice-of-law provision contained in the agreement . . . ."). Here, Plaintiff has not set forth any "unusual circumstances" justifying invalidation of the New York choice-of-law provision. Indeed, PwC's headquarters is located in New York, *see* Doc. No. 7-2, ¶ 2 ("PricewaterhouseCoopers LLP . . . is a national firm, with . . . its main office in New York, New York."), which makes New York law a reasonable choice of law for a nationwide agreement for PwC employees. And as explained above, application of New York law would not violate South Carolina public policy given their similarities.

respect to Plaintiff's Title VII claims is inconsistent with the law and should not be adopted. The Recommendation finds that the Arbitration Agreement is "unenforceable as unconscionable as to [Plaintiff's] Title VII claims" under both New York and South Carolina law. Doc. No. 12 at 12, 13. PwC objects to this conclusion, which is completely unmoored from the law and the doctrine of unconscionability. To support a finding of unconscionability, an agreement must be *both* substantively unconscionable *and* procedurally unconscionable. *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) ("[T]o prevail on an unconscionability claim under New York law, a plaintiff must show that an agreement is both substantively and procedurally unconscionable at the time it is entered into.").[3] For the reasons set forth below, the Title VII Exclusion is *neither* substantively *nor* procedurally unconscionable, and therefore there is simply no basis for declining to enforce the provision as written.

1. **The Title VII Exclusion Is Not Substantively Unconscionable**

The Recommendation summarily concludes—without the support of any legal authority—that the Arbitration Agreement is substantively unconscionable under New York law[4]

---

[3] Although South Carolina law does not use the terms "procedural" and "substantive" unconscionability, the unconscionability test under South Carolina law contains two prongs, both of which must be met: (1) an "[a]bsence of meaningful choice on the part of one party [which] generally speaks to the fundamental fairness of the bargaining process in the contract at issue" [*i.e.*, procedural unconscionability] together with (2) "terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." [*i.e.*, substantive unconscionability], *Simpson*, 644 S.E.2d at 668–69; *see also Smith v. D.R. Horton, Inc.*, 790 S.E.2d 1, 4 n.5 (S.C. 2016) (observing that the court of appeals "addressed only the allegedly oppressive nature of the terms found in the arbitration agreement, but appears not to have considered whether the [plaintiffs] lacked a meaningful choice in agreeing to arbitrate," and "caution[ing] courts and parties in the future to analyze both prongs of unconscionability."); *York v. Dodgeland of Columbia, Inc.*, 749 S.E.2d 139, 148 (S.C. Ct. App. 2013). These prongs mirror New York's procedural and substantive prongs, respectively.

[4] The Recommendation does not analyze the substantive component of unconscionability under South Carolina law. To the extent South Carolina's law is held to apply despite the Arbitration Agreement's valid choice-of-law provision, Defendant objects to the

7

because "it unreasonably favor[s] Defendant as the sole party which could determine whether Title VII claims were covered on any given date." Doc. No. 12 at 13. In reaching this conclusion, the Recommendation bootstraps a *substantive* unconscionability analysis to a *procedural* aspect of the Title VII Exclusion, thereby improperly conflating the concepts of procedural and substantive unconscionability.

Under New York law, substantive unconscionability "focuses on the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 351 (S.D.N.Y. 2014), *aff'd*, 633 F. App'x 544 (2d Cir. 2015) (internal quotation marks omitted); *see also Cox House Moving, Inc. v. Ford Motor Co.*, No. CA 7:06-1218 HMH, 2006 WL 2303182, at *4 (D.S.C. Aug. 8, 2006) (considering in its unconscionability analysis whether the "contract terms . . . are unreasonably favorable to the other party.") (internal quotation marks omitted). "An agreement is substantively unconscionable if it 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Ragone v. Atl. Video at Manhattan Ctr.*, No. 07 CIV. 6084 (JGK), 2008 WL 4058480, at *4 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010) (quoting *Sablosky v. Edward S. Gordon Co., Inc.*, 535 N.E.2d 643, 647 (N.Y.1989)). In other words, "[a] contract term is only substantively unconscionable if no reasonable person would agree to it." *See Waumboldt v. Callimanopulos*, No. 11 CIV. 7416 TPG, 2012 WL 3589423, at *4 (S.D.N.Y. Aug. 20, 2012).

Here, the substantive unconscionability of the Title VII Exclusion hinges on whether requiring employees to arbitrate their Title VII claims unless the Franken Amendment applies is

---

Recommendation's failure to consider under South Carolina law whether the terms were "so oppressive that no reasonable person would [agree to] them." *See Simpson*, 644 S.E.2d at 668.

"unreasonably favorable" to PwC. Plainly, it is not. Under well-established Supreme Court precedent, "statutory claims may be the subject of an arbitration agreement," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991), and the Second and Fourth Circuits—along with every other Circuit—have held that pre-dispute arbitration agreements are enforceable with respect to Title VII claims. *See, e.g.*, *Desiderio*, 191 F.3d at 206; *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 882 (4th Cir. 1996). Accordingly, it is simply not the case that requiring arbitration of Title VII claims unless the Franken Amendment applies would be "grossly unreasonable or unconscionable in light of the [relevant] mores and business practices." And of course, it would not be "unreasonably favorable" to PwC if Plaintiff were permitted to bring her Title VII claims in court in circumstances in which the Franken Amendment does apply. Thus, under either operation of the provision—i.e., a circumstance in which the Franken Amendment prohibited PwC from mandating arbitration of Title VII claims or a circumstance in which it did not—the term is not substantively unconscionable.

To the extent—as the Report suggests—the problem with the provision is that Plaintiff could not determine whether or not the provision would apply to her claims, that goes to a procedural—not a substantive—facet of the provision. As neither Plaintiff nor the Recommendation identify any other aspect of the Arbitration Agreement that is substantively unconscionable, the Recommendation's conclusion that the agreement is substantively unconscionable should be rejected. Because a finding of unconscionability requires both substantive and procedural unconscionability, *Isaacs*, 968 F. Supp. 2d at 569, the lack of substantive unconscionability is fatal to the Recommendation's conclusion that the Title VII Exclusion is unconscionable.

### 2. The Title VII Exclusion Is Not Procedurally Unconscionable

The Recommendation concludes that the Arbitration Agreement is procedurally unconscionable because Plaintiff "did not have a meaningful choice, as she was without the information to determine whether [her Title VII] claims were covered when she signed the Arbitration Agreement." Doc. No. 12 at 13; *see also id.* at 10–11 (concluding that the "majority of the factors [for assessing whether parties had meaningful choice] weigh in favor of unconscionability as to Plaintiff's Title VII claims").

Under New York law, "[p]rocedural unconscionability examines the contract-formation process and focuses on the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y. 2017) (internal quotation marks omitted). The Recommendation wholly fails to consider these factors in its analysis of New York law, although it does consider some of these factors in its analysis of South Carolina law. These factors, considered together, weigh against a finding of procedural unconscionability. Plaintiff has not presented any evidence that PwC employed deceptive or high-pressured tactics to coerce her into signing the agreement, and the Recommendation at no point even considers this factor. The Title VII Exclusion does not appear in fine print, and—as the Recommendation acknowledges in its analysis of South Carolina law—the conspicuousness of the Arbitration Agreement weighs in PwC's favor. Doc. No. 12 at 11. The Recommendation's finding—without any evidentiary basis—that Plaintiff "is not sophisticated" is not borne out by the facts. *See id.* Plaintiff, who worked in PwC's Advisory group, is a highly-educated professional with advanced degrees from Harvard University and Columbia University, and a Bachelor's degree from Stanford University. Doc. No. 2 Ex. A, p. 2. Given her educational background and professional responsibilities, Plaintiff's level of sophistication weighs in PwC's favor, not against it.

Although PwC likely had more bargaining power than Plaintiff, under New York law, "the fact that there is inequality in bargaining power between an employer and a potential employee is not a sufficient reason to hold that arbitration agreements are not enforceable in the employment context." *Isaacs*, 968 F. Supp. 2d at 570; *see also Ragone*, 595 F.3d 115 at 121 ("[E]ven to the extent that the law recognizes that employers and individual employees do not possess equal bargaining power, the FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration."). Without a finding that PwC employed high-pressure tactics or buried the clause at issue in the agreement's fine print, the Recommendation's determination that there was an inequality of bargaining power and sophistication between the parties is insufficient to support a finding of procedural unconscionability under New York law. *See Ragone*, 595 F.3d at 122 (rejecting various arguments that an arbitration agreement was procedurally unconscionable, including that plaintiff "was offered the arbitration agreement on a 'take it or leave it basis,'" that plaintiff "did not read the arbitration agreement before signing it," and that plaintiff "d[id] not have a college degree and has no experience or background in business or human resources.") (internal quotation marks omitted); *Isaacs*, 968 F. Supp. 2d at 570 ("[T]he fact that [defendant] unilaterally drafted the Policy and required the plaintiff to sign the Policy as a condition of his employment does not in itself render the Policy unconscionable.").[5]

---

[5] Under South Carolina law, the procedural component of the unconscionability analysis hinges on whether there is "[a]bsence of meaningful choice on the part of one party[, which] generally speaks to the fundamental fairness of the bargaining process in the contract at issue." *Simpson*, 644 S.E.2d at 668–69. As the Recommendation notes, "[i]n determining whether the parties had meaningful choice [under South Carolina law], six factors are considered: the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause." Doc. No. 12 at 10-11 (quoting *Simpson*, 644 S.E.2d at 669). These factors largely overlap with the relevant factors under New York law. *Munoz v. Green Tree Fin. Corp.*, 542

Instead of looking at the relevant factors, the Recommendation focuses almost exclusively on Plaintiff's purported inability to "independently determine whether Title VII claims were covered by the Arbitration Agreement." Doc. No. 12 at 11–13. But even that argument fails. Whether Title VII claims were covered at the time Plaintiff signed the Agreement (or later) was an objective fact Plaintiff could have determined had she undertaken appropriate diligence prior to signing the agreement. The notion that Plaintiff could have done nothing to figure out whether Title VII claims were subject to the Arbitration Agreement at the time she signed it defies common sense and conflicts with New York law that imposes obligations on a contracting party to read and try to understand a contract.

Under New York law, "[a] party's failure to read or understand a contract that it signs does not relieve it of its obligation to be bound by the contract." *See In re Lehman Bros. Inc.*, 478 B.R. 570, 587 n.19 (S.D.N.Y. 2012), *aff'd*, 761 F.3d 303 (2d Cir. 2014).[6] Indeed, New York courts have rejected claims that arbitration agreements are procedurally unconscionable where the plaintiff either did not have a relevant piece of information or was unable to determine the meaning of a contract without assistance, at least where the plaintiff could have taken steps to obtain the information.

For instance, in *Tarulli v. Circuit City Stores, Inc.*, 333 F. Supp. 2d 151 (S.D.N.Y. 2004), the plaintiff claimed that an arbitration agreement was procedurally unconscionable "because the

---

S.E.2d 360, 365 n.5 (S.C. 2001) ("Inequality of bargaining power alone will not invalidate an arbitration agreement."); *McCutcheon v. THI of S.C. at Charleston, LLC*, No. 2:11–CV–02861, 2011 WL 6318575, at *4 (D.S.C. Dec. 15, 2011) ("[A]ny lack of sophistication on the part of [plaintiff] does not overcome the fairness of the terms in the agreement itself.").

[6] Although New York law properly applies to the determination of the validity of the Arbitration Agreement, South Carolina law imposes a similar obligation to read and try to understand a contract before signing. *See Wachovia Bank, Nat'l Ass'n v. Blackburn*, 755 S.E.2d 437, 443 (S.C. 2014) ("[W]hen a person signs a document, he is responsible for exercising reasonable care to protect himself by reading the document and making sure of its contents.").

Defendant withheld a key component of the Agreement, a copy of the Rules [governing the arbitration procedure], from the Plaintiff." *Id.* at 157. The court observed that the plaintiff "voluntarily signed the Agreement, even without (she claims) reviewing the Agreement," and that she "never requested a copy [of the rules] during her six years of employment . . . ." *Id.* at 157–58. Refusing to allow the plaintiff "to benefit by her own inaction," the court rejected plaintiff's argument that the agreement was procedurally unconscionable. *Id.* at 158. Similarly, in *Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378 (S.D.N.Y. 2017), the plaintiff argued that an arbitration agreement was procedurally unconscionable because he could not understand English, but the court rejected this claim on the ground that New York law makes it "incumbent upon parties who do not read or understand English to make a reasonable effort to have the document explained to [them]." *Id.* at 391 (internal quotation marks); *see also Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 149 (2d Cir. 2004) (rejecting argument that arbitration clause was unenforceable because plaintiff failed to fully read or understand the agreement, because "even if [plaintiff] did not understand the form or had questions about the arbitration clause or the rules, as he alleges, the burden was upon him to have his concerns addressed before signing Form U–4").

These cases squarely reject the Recommendation's suggestion that an arbitration agreement is procedurally unconscionable where a party is "without the information to determine" the meaning of the agreement, Doc. No. 12 at 13, at least where that information is obtainable by the party's diligence. They also undermine the Recommendation's suggestion that a party's "inability to *independently* determine" the applicability of the Title VII Exclusion necessitates a finding of unconscionability. *Id.* (emphasis added). Rather, these cases demonstrate that courts routinely expect parties to seek assistance from others in understanding the terms of a contract if the party is unable to understand the terms on her own.

13

In this case, Plaintiff could have taken steps to determine whether Title VII claims were covered under the Arbitration Agreement—she simply could have asked a PwC representative whether such claims were covered. Indeed, under New York law, if Plaintiff "had questions about the arbitration clause . . . the burden was upon [her] to have [her] concerns addressed before signing." *Gold*, 365 F.3d at 149. To hold otherwise would allow Plaintiff "to benefit by her own inaction." *Tarulli*, 333 F. Supp. 2d at 158. Instead, Plaintiff did not even "attest that she *read*" the Arbitration Agreement. *See* Doc. No. 12 at 8–9 (emphasis added). Accordingly, Plaintiff's decision not to take the steps necessary to understand the Title VII Exclusion did not prevent her from having a "meaningful choice" of whether to agree to the term. *See id.* at 10.[7]

In sum, the Recommendation's conclusion that the clause is procedurally unconscionable should be rejected.

\*     \*     \*

---

[7] To the extent South Carolina law governs the enforceability of the Agreement, the Recommendation's reliance on the concept of "surprise" in its unconscionability analysis is far afield of how South Carolina courts ordinarily interpret that term. Under South Carolina law, courts consider a clause a "surprise" where it was buried or hidden in the contract, or included in the agreement at the last minute. *See, e.g.*, *Lucey v. Meyer*, 736 S.E.2d 274, 284–85 (S.C. Ct. App. 2012) ("[T]his was not a lengthy contract at three pages. The arbitration clause is on the second page, and it is not 'buried' within the short contract; thus, there does not appear to be any element of surprise."); *Kaplan v. RCA Corp.*, 783 F.2d 463, 467 (4th Cir. 1986) ("Nor was the clause . . . 'lost in a linguistic maze' or a surprise to appellants. The type was bold-faced and was capitalized and had been included in the parties' prior contract for the pattern study."). The clause here is not hidden in the contract, and was not added as a late addition to the agreement. The Recommendation does not suggest that the clause is incomprehensible, only that Plaintiff is not in a position to know immediately whether a particular claim is arbitrable. But for the reasons explained below, Plaintiff could have determined this fact by exercising diligence.

Because neither the substantive component nor the procedural component of unconscionability are present in the Arbitration Agreement, the Recommendation's conclusion that the Agreement is unconscionable as to Plaintiff's Title VII claims cannot stand.[8]

### 3. The Liberal Federal Policy Favoring Arbitration Requires That Any Doubt As to Whether Plaintiff's Title VII Claims Are Subject to Arbitration Must Be Resolved in Favor of Arbitration

In an attempt to avoid enforcement of a provision the application of which could change over time, the Recommendation attempts to frame the issue of whether the Title VII claims must be arbitrated as one of unconscionability. But the real issue here is whether or not Title VII claims are excluded from the Arbitration Agreement's definition of "Covered Claims." To the extent the Recommendation finds that Title VII Exclusion's applicability is unclear, federal law dictates that Plaintiff's claim must be arbitrated.

The FAA contains a strong statutory command, repeatedly reinforced by Supreme Court decisions, that:

> "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . *shall be* valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2 (emphasis added); *see also AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339

---

[8] Even if the Title VII Exclusion were unconscionable—which it is not—the proper remedy would be to sever the provision from the agreement, the effect of which would be that Title VII claims are not excluded from the definition of "Covered Claims" and therefore are subject to mandatory arbitration. *See, e.g.*, *Ragone*, 595 F.3d at 124–25 ("[T]he appropriate remedy [under New York law] when a court is faced with a plainly unconscionable provision of an arbitration agreement . . . is to sever the improper provision of the arbitration agreement . . . .") (internal quotation marks omitted); *Simpson*, 644 S.E.2d at 674 (indicating that severing an unconscionable provision is the appropriate remedy where only a single provision is unconscionable); *see also* Arbitration Agreement, Doc. No. 7-2 at 19 ("In the event that an provision of this Agreement is determined to be invalid or unenforceable, it shall be severed from the Agreement, and the rest of the Agreement shall be enforced to the maximum extent permitted by law . . . .").

(2011). The FAA does not simply place arbitration agreements on equal footing with other contracts; rather, it "*favor*[*s*] arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added). Just last month, the Supreme Court reaffirmed that the FAA "requires courts 'rigorously' to enforce arbitration agreements according to their terms . . . ." *Epic Sys. Corp. v. Lewis*, -- S. Ct. --, 2018 WL 2292444, at *5 (May 21, 2018) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Thus, as the Recommendation recognizes, if the Arbitration Agreement's terms are unclear as to whether a claim is subject to arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Doc. No. 12 at 5 (citing *Moses H. Cone*, 460 U.S. at 24–25). Yet, in concluding that Plaintiff's Title VII claims are not arbitrable, the Recommendation fails to apply this default rule. *See id.* at 9–13.

Under these principles, to the extent there is any doubt whether Plaintiff's Title VII claims are subject to arbitration under the agreement, the Recommendation errs by failing to find the claim arbitrable. That the language of the agreement allowed for the arbitrability of Title VII claims to change based on changes in the law or facts is of no moment. In *Spurlock v. Life Ins. Co. of Va.*, No. CIV.A.98-D-222-N, 2000 WL 1785300 (N.D. Ala. Oct. 31, 2000), the plaintiff argued that the following language was "ambiguous at best" and could not support a finding that its claims were arbitrable: "This agreement to arbitrate does not apply to future disputes arising under certain of the federal securities laws to the extent it has been determined as a matter of law that [the plaintiff] cannot be compelled to arbitrate such claims." *Id.* at *9. The court rejected the plaintiff's argument, finding that the arbitration agreement "sufficiently defines the types of federal securities laws exempted by limiting the exclusion from arbitration to only federal security law causes of action that are determined as a matter of law to be non-arbitrable. The class of federal security laws is not immeasurable, but, rather, contains a specific limitation." *Id.* at *10 (internal quotation marks and citation omitted). Further, the court found that, "[t]o the

extent that the scope of the exemption is unclear as to which federal securities laws are excluded or as to what entities can make the 'matter of law' determination, all doubts must be resolved in favor of a finding that Plaintiffs' disputes are arbitrable." *Id.*

Like the provision at issue in *Spurlock*, the Title VII Exclusion designates a dispute arbitrable (or not) based on some future event (claim is deemed non-arbitrable, or here, claim becomes arbitrable because law or facts change). The *Spurlock* court rejected the argument that this ambiguity prevented arbitration of plaintiff's claims, and it did not suggest that the uncertainty rendered the agreement unconscionable.

In any event, PwC has established here that, at the time Plaintiff signed the Arbitration Agreement, and at the time the claims arose, Plaintiff's Title VII claims were subject to arbitration. *See* Doc. No. 7-1 at 3 n.2 ("From the time Plaintiff's employment with PwC began through the present . . . PwC is no longer bound by the provision of the Franken Amendment as it no longer performs the types of work that invoke the prohibition on mandatory arbitration."). Accordingly, there was, and is, no doubt that Plaintiff's claims are subject to arbitration under the Arbitration Agreement. And although Plaintiff failed to read the agreement before signing it, to the extent the provision was unclear to Plaintiff, she could have removed all doubt by exercising minimal diligence and asking PwC whether Title VII claims were subject to arbitration.

In short, the Recommendation's failure to follow the statutory dictate—reinforced by a long line of Supreme Court cases—to put a heavy thumb on the scale in favor of arbitration is error.

## V. CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court decline to adopt the Recommendation's finding that the Arbitration Agreement is unenforceable as

17

unconscionable as to Plaintiff's Title VII claims, and issue an order compelling arbitration of Plaintiff's claims and dismissing Plaintiff's Complaint in its entirety or, alternatively, staying all proceedings, thereby providing Plaintiff in either case with the opportunity to initiate arbitration proceedings.

s/Stacy K. Wood
Stacy K. Wood
S.C. Bar No. 8953; Fed. ID No. 9085
stacywood@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 335-9844
Facsimile: (704) 334-4706

Jason C. Schwartz (*Pro Hac Vice application pending*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8242
jschwartz@gibsondunn.com

*Attorneys for Defendant*

June 5, 2018
Charlotte, North Carolina

# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| SHANNON ASHFORD, | ) |
| | ) **Case No: 3:18-cv-00904-CMC-SVH** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **CERTIFICATE OF SERVICE** |
| PRICEWATERHOUSECOOPERS, LLP, | ) |
| | ) |
| Defendant. | ) |

I hereby certify that a copy of **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS PROCEEDINGS** was served upon the *pro se* Plaintiff on June 5, 2018, by U.S. Mail, addressed as follows:

>Shannon Ashford
>22 New Holland Circle
>Columbia, SC 29203

>s/Stacy K. Wood
>Stacy K. Wood
>S.C. Bar No. 8953; Fed. ID No. 9085
>stacywood@parkerpoe.com
>PARKER POE ADAMS & BERNSTEIN LLP
>Three Wells Fargo Center
>401 South Tryon Street, Suite 3000
>Charlotte, North Carolina 28202
>Telephone: (704) 335-9844
>Facsimile: (704) 334-4706
>
>*Attorney for Defendant*