IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Shannon Ashford, | C/A No. 3:18-cv-904-CMC-SVH |
| Plaintiff, | |
| v. | Opinion and Order<br>On Motion to Compel Arbitration<br>And Stay or Dismiss Action |
| PricewaterhouseCoopers, LLP, | ECF No. 7 |
| Defendant. | |

Through this action, Plaintiff Shannon Ashford ("Ashford"), proceeding pro se, seeks recovery from PricewaterhouseCoopers, LLP ("PwC"), for alleged retaliation and race-based discrimination in employment. *See infra* Factual Background (addressing Ashford's employment relationship and contracts). Ashford pursues her retaliation claim (first cause of action) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). ECF No. 1-1 at 8, 9. She pursues her discrimination claim (second cause of action) under both Title VII and 42 U.S.C. § 1981 ("Section 1981"). *Id.* at 9.

The matter is before the court on PwC's motion to compel arbitration and stay or dismiss the action. ECF No. 7 ("Motion to Compel"). For reasons set forth below, PwC's Motion to Compel is granted to the extent Ashford pursues her second cause of action under Section 1981. The motion is denied to the extent it seeks to compel arbitration and dismiss Ashford's first cause of action, which is pursued solely under Title VII, or second cause of action to the extent pursued under Title VII. However, due to overlapping issues, the Title VII claims are stayed until arbitration proceedings as to the Section 1981 claim are concluded.

## REPORT AND RECOMMENDATION

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On May 22, 2018, the Magistrate Judge issued a Report recommending the Motion to Compel be granted to the extent Ashford seeks relief under Section 1981 and denied to the extent she seeks relief under Title VII. ECF No. 12. The Report further recommends the matter be stayed as to the Title VII claims pending completion of arbitration. *Id.*

The first recommendation rests on two conclusions: (1) Ashford electronically signed an Employment Agreement that incorporates an Arbitration Agreement; and (2) the Arbitration Agreement mandates Ashford's Section 1981 claim be resolved by arbitration. The second recommendation rests on a conclusion the "Arbitration Agreement is unenforceable as unconscionable as to Title VII claims." ECF No. 12 at 12, 13 (reaching same conclusion under both South Carolina and New York law).

The recommended finding of unconscionability is based on PwC's proffered interpretation of the Arbitration Agreement's express exclusion of "[c]laims that arise under Title VII . . . *unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims.*" *See* ECF No. 12 at 9 (addressing Arbitration Agreement § 1.d.(viii)) (emphasis added). PwC construes "federal law" to refer to the "Franken Amendment," which limits use of federal funds for certain contracts unless the contractor agrees not to require arbitration of specified claims. *See infra* n. 12 (quoting implementing regulations). It also construes the limiting language ("unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims") to be triggered if PwC is "no longer bound by the provisions of" the Franken Amendment because it

"no longer performs the types of work that invoke [that Amendment's] prohibition on mandatory arbitration." ECF No. 12 at 11 (quoting ECF No. 7.1 at 3, n.2).

Addressing PwC's proposed construction, the Report concludes it would be unconscionable to allow PwC to invoke the limitation and evade the express exclusion because it was only through an interpretation stated in and a factual declaration attached to PwC's memorandum that Ashford received notice the limitation had been triggered. *Id.* at 11. Allowing the limitation to defeat the express exclusion under these circumstances would be unconscionable because Ashford "would not be able to independently ascertain whether a Title VII claim was covered by the Arbitration Agreement on the date she signed it, on the date it became effective, on the date she first knew of a potential Title VII claim, or any other date." *Id.* at 11, 12.

## OBJECTIONS

The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. PwC filed a timely objection on June 5, 2018, arguing the Report errs in recommending a finding of unconscionability and seeking dismissal in favor of arbitration as to all claims. ECF No. 16.

Ashford did not file an objection. She, instead, filed a response to PwC's objection, arguing the court should adopt the Report in full. ECF No. 20 (filed June 12, 2018). Thus, Ashford does not object to the recommendation arbitration be compelled as to her Section 1981 claim and underlying conclusion she is bound by the Arbitration Agreement. Neither does she object to the recommendation the matter be stayed as to her Title VII claim until arbitration proceedings are concluded.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a de novo determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## BACKGROUND

**Employment Relationship.** In March 2015, Ashford accepted an offer of employment with PwC Advisory LLC.[1] PwC Advisory LLC is an entity affiliated with PwC.[2] Ashford has nonetheless alleged and PwC concedes it is Ashford's employer.[3]

---

[1] ECF No. 7-2 at 20; Levine Decl. ¶ 4 (addressing Ashford's electronic acceptance on March 11, 2015); ECF No. 7-2 at 5-7 (Offer Letter, naming PwC Advisory LLC as the employer); *id.* at 9-14 (Employment Agreement, same).

[2] ECF No. 7-2 at 5 (Offer Letter referring to an unspecified "relationship" between PwC and PwC Advisory LLC); *id.* at 10 (Employment Agreement with PwC Advisory LLC including multiple references to PwC as "PwC LLP").

[3] *See, e.g.,* ECF No. 1-1 ¶ 8 (naming PwC as sole Defendant and stating Ashford was "hired by Defendant in or about April of 2015"); ECF No. 7-1 at 1 (PwC stating it is Ashford's employer in

**Offer Letter and Employment Agreement.** The terms of Ashford's employment are addressed in both an Offer Letter and Employment Agreement. ECF No. 7-2 at 5-14. The Offer Letter states the "Employment Agreement will become effective on your first day of employment with the Firm." *Id.* at 6. Ashford's employment began in April 2015. ECF No. 1-1 ¶ 8; Johnson decl. ¶ 3.

The Employment Agreement incorporates an "arbitration agreement attached . . . as Exhibit A[,]" and states the Arbitration Agreement "requires both you and the Firm to submit to final and binding arbitration all claims covered under the arbitration agreement." *Id.* at 13. The Employment Agreement defines the "Firm" as PwC Advisory LLC. *Id.* at 9.[4]

**Arbitration Agreement.** The Arbitration Agreement addresses "legal disputes that may arise between you and PricewaterhouseCoopers LLP, and/or any of its subsidiaries or affiliates based in the United States (collectively the 'Firm')." *Id.* at 16. It defines "Covered Claims" broadly, essentially to include all disputes between the Firm and the employee except as specifically excluded in a section titled "Claims Not Subject to Arbitration." *Id.* at 17. That section includes the following language:

> The following types of claims are *expressly excluded* from the definition of Covered Claims:
>
> \* \* \*
>
> (viii) *Claims that arise under Title VII* of the Civil Rights Act of 1964, which prohibits employment discrimination on the basis of race, color, religion, sex and national origin, *unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims*[.]"

---

memorandum in support of Motion to Compel); ECF No. 7-2 ¶¶ 4, 5 (Levine Decl. referring to Ashford's employment with PwC); ECF No. 7-3 ¶ 3 (Johnson Decl., same).

[4] The "Firm" is defined more broadly in the Arbitration Agreement (discussed below). In contrast, PwC's memoranda define the same term to refer specifically to PwC. *E.g.*, ECF Nos. 7-1 at 1, 11 at 1.

ECF No. 7-2 at 17 § 1.d.(viii) (emphasis added).

**Ashford's Complaint.** Ashford alleges she was hired by PwC in April 2015 and "informed management of [unspecified] concerns about discrimination" in or about October 2015. ECF No. 1-1 ¶¶ 8, 9. She alleges she was subsequently denied various promotions and opportunities to fill different positions in June, July, and September of 2016, as well as in March and June of 2017. *Id.* ¶¶ 10-14. "Unable to have her issues and concerns addressed," she filed a charge of discrimination on an unspecified date and experienced further discriminatory treatment thereafter. *Id.* ¶¶ 15-17. Although she does not address when or how her employment ended, her damages demand indicates she was discharged from employment prior to filing this action. *Id.* at 8, 9 (seeking, inter alia, "backpay . . . from the date of discharge until [she] is restored to a rightful position"). Based on these factual allegations, Ashford asserts two causes of action, the first a retaliation claim under Title VII and the second a claim for disparate treatment under Section 1981 and Title VII.

**Removal and Motion to Compel.** PwC removed the action to this court and promptly filed its Motion to Compel. In a footnote in its opening brief in support of that motion, PwC asserts Ashford's Title VII claims are subject to arbitration because the limitation on the Arbitration Agreement's exclusion of Title VII claims was *never effective* as to Ashford:

> At the time the Arbitration Agreement was initially drafted, the Firm was subject to certain provisions of the Franken Amendment to the 2010 Department of Defense ("DOD") Appropriations Act ("the Act") regarding arbitration of employee claims, which prohibited the DOD from entering into non-commercial contracts in excess of $1 million with any employer that required its employees to arbitrate, inter alia, Title VII claims. 48 C.F.R. §§ 222.7402, 222.7403. Accordingly, the Arbitration Agreement excluded Title VII claims from "Covered Claims" subject to mandatory, binding arbitration, "unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims." [quoting Agreement] From the time Plaintiff's employment with PwC began, through the present, however, PwC is no longer bound by the provisions of the Franken

Amendment as it no longer performs the types of work that invoke the prohibition on mandatory arbitration. [citing Johnson Declaration]. Therefore, since federal law no longer prohibits PwC from mandating arbitration of Title VII claims, those claims are subject to mandatory arbitration.

ECF No. 7-1 at 3, n.2.

The cited Johnson Declaration states, in relevant part, as follows:

3.      I understand that Shannon Ashford commenced the Action on November 29, 2017. From that date through the date of this Declaration, PwC has not been a party to any non-commercial contract with the U.S. Department of Defense in excess of $1 million that was executed on or after February 17, 2010. Moreover, PwC has not been a party to such contracts since Ms. Ashford became employed by PwC in or around April 2015.

ECF No. 7-3 at 2.

PwC makes essentially the same argument in its reply in support of the Motion to Compel asserting "[t]there is no question . . . that from the time Plaintiff's employment with PwC began through the present, *PwC is no longer bound by the provisions of the Franken Amendment as it no longer performs the types of work that invoke the prohibition on mandatory arbitration*." ECF No. 11 at 5 (emphasis added). "Therefore, since 'federal law no longer prohibits the Firm from mandating arbitration of [Title VII claims[,]' those claims are not excluded and are subject to mandatory arbitration." *Id.*

## DISCUSSION

### I.      Section 1981 Claim

Neither party objects to the recommendation the court compel arbitration and dismiss the second cause of action to the extent it is pursued under Section 1981. The court, therefore, reviews this recommendation for clear error. Finding none, the court adopts the Report's rationale and recommendation, including recommendations the court find: (1) Ashford entered into and is bound by the Arbitration Agreement filed as ECF No. 7-2 at 16-19; and (2) the Arbitration

Agreement requires Ashford to arbitrate her second cause of action to the extent founded on Section 1981 because Section 1981 claims falls within the Arbitration Agreement's broad definition of "Covered Claims" (Arbitration Agreement § 1.c.) and are not excluded as a "Claim[] Not Subject to Arbitration" (Arbitration Agreement § 1.d.).

The court, therefore, grants the Motion to Compel in part and dismisses the second cause of action without prejudice to the extent pursued under Section 1981.

## II.    Title VII Claims

As explained above ("Report and Recommendation"), the Report focuses on PwC's proffered construction of the language limiting the Title VII exclusion and, applying that construction, finds the Arbitration Agreement unconscionable to the extent it requires arbitration of Title VII claims.

**PwC Objection.**  PwC objects to the Report to the extent it recommends the court find Title VII claims are not subject to arbitration.  It asks the court to reject the finding of unconscionability and compel arbitration as to all causes of action.

In argument similar to its pre-Report memoranda, PwC argues the Title VII Exclusion:

> was designed to address the Franken Amendment, a provision of federal law that bars certain federal defense contractors from enforcing pre-dispute arbitration claims with employees regarding Title VII and certain other claims.  At one time, PwC was a covered federal defense contractor subject to the Franken Amendment, and the language was designed to reflect that fact and to accommodate future scenarios in which *either* PwC no longer held covered federal defense contracts *or* the Franken Amendment was no longer in force.

ECF No. 16 at 2, 3 (emphasis added).[5]

---

[5]  This proposed construction differs from the construction advanced in PwC's prior arguments, which maintained PwC was "no longer bound by the provisions of the Franken Amendment *as it*

PwC argues the limitation on the exclusion (as it interprets it) is not unconscionable under either South Carolina or New York law. It maintains New York law controls and requires proof of both procedural and substantive unconscionability and argues Ashford cannot satisfy either prong. ECF No. 16 at 6-15 (noting New York and South Carolina's requirements are comparable, though worded differently). Even if the provision at issue is unconscionable, PwC argues the proper remedy, under New York law, is to "blue pencil" the Title VII exclusion, leaving Title VII claims subject to binding arbitration.[6] It also asserts the practical effect of a stay is (or at least may be) the same as granting its motion given the potential preclusive effect of an arbitration decision.[7]

**Ashford's Response.** Ashford argues the court should overrule PwC's objections and adopt the Report in full.

**Rules of Contract Construction.** PwC argues, and the court agrees, that New York law governs construction of the Arbitration Agreement.[8] As summarized in *In re DPH Holdings Corp.*, B.R. 20 (S.D.N.Y 2016), New York applies the following rules of contract construction:

---

*no longer performs the types of work* that invoke the prohibition on mandatory arbitration." ECF No. 7-1 at 3, n.2 (emphasis added); ECF No. 11 at 5 (emphasis added). The earlier memoranda did not refer to PwC no longer being "a covered federal defense contractor." Neither did they address the alternative of the Franken Amendment "no longer [being] in force."

[6] PwC assumes blue penciling would apply to the entire exclusion. It does not address why the court could not strike the limiting language, which is the basis of the Report's finding of unconscionability (if construed as argued by PwC).

[7] PwC does not distinguish here between the second cause of action, which is pursued under Section 1981 and Title VII, necessarily based on the same allegations, and the first cause of action, which presumably seeks relief for the same adverse actions, but based on a different theory of motivation (retaliation) and solely under Title VII.

[8] The Arbitration Agreement includes a choice of law provision calling for application of New York law. ECF No. 7-2 at 19 § 5. Plaintiff does not argue for application of South Carolina law.

When interpreting a contract, [the court's] primary objective is to give effect to the intent of the parties as revealed by the language of their agreement. The words and phrases in the contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.

[A] contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology generally understood in the particular trade or business. No ambiguity exists where the [contract] language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself and concerning which there is no reasonable basis for a difference of opinion.

* * *

Thus, in a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous. . . . When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms. . . . The language of a contract is not made ambiguous simply because the parties urge different interpretations in the litigation, nor does ambiguity [exist] where one party's view strains the contract language beyond its reasonable and ordinary meaning, . . . or where ambiguity emanates not from the language used in the contract but, rather, from a party's subjective perception of its terms. . . . If the Agreement on its face is reasonably susceptible to only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity.

*Id.*, 553 B.R. at 26, 27 (internal citations and marks omitted). South Carolina's rules of construction are similar.[9]

_____

[9]  As explained in *C.A.N. Enterprises, Inc. v. S.C. Health and Human Svcs. Fin. Comm'n.*, 373 S.E.2d 584 (S.C. 1988):

Common sense and good faith are the leading touchstones of the construction of the provisions of a contract; where one construction makes the provisions unusual or extraordinary and another construction which is equally consistent with the language employed, would make it reasonable, fair and just, the latter construction must prevail. . . . In construing terms in contracts, this Court must first look at the language of the contract to determine the intentions of the parties. . . .

When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their

**Construction and Application of Limitation on Title VII Exclusion.** The court reaches the same ultimate result as does the Report but arrives there by an additional route. Specifically, the court rejects PwC's construction of the limitation on the express exclusion of Title VII claims from the definition of "Covered Claims" and, consequently, from mandatory arbitration.[10] Further, even if the limitation could be construed as PwC suggests, PwC has not proffered proof the limitation was triggered. Under these circumstances, the court finds PwC has not established the limitation applies, thus leaving the express exclusion of Title VII claims from mandatory arbitration in effect.

The critical provision expressly excludes Title VII claims from mandatory arbitration "unless and until federal law no longer prohibits the Firm from mandating arbitration of [Title VII] claims." Arbitration Agreement ¶ 1.c.(vii). PwC's argument the limitation has been effective at all times relevant to Ashford's claims depends on construction of "federal law" in this clause to refer to the Franken Amendment and the "unless and until federal law no longer prohibits" language to be triggered by PwC's cessation of work subject to (or absence of a contractual relationship governed by) the Franken Amendment.[11] For reasons explained below, the court does not find either construction of the language used in the Arbitration Agreement reasonable. Even

--------------------

plain, ordinary and popular sense. . . . Extrinsic evidence giving the contract a
different meaning from that indicated by its plain terms is inadmissible.
*Id.* at 586, 587.

[10] In analyzing whether the Arbitration Agreement was unconscionable as applied to Title VII claims, the Report focused on PwC's interpretation of the language limiting the Title VII exclusion. It did not address whether PwC's interpretation was reasonable.

[11] As noted above, PwC acknowledges an alternative reading (though presented as an additional reading) of the limitation to be triggered if the Franken Amendment is "no longer in force." It does not suggest such a change in "federal law" has occurred.

if they were reasonable constructions, PwC has failed to proffer evidence the "Firm," as broadly defined in the Arbitration Agreement, has not been performing work or party to a contract subject to the Franken Amendment at relevant times. Thus, PwC has failed to proffer evidence necessary to establish the limitation was triggered, even under its own construction of the limiting clause.

**Meaning of "Federal Law."** PwC's argument rests on a construction that replaces "federal law" with "the Franken Amendment," even though the latter is not referenced by name, regulatory citation, or content, in either the exclusion of Title VII claims or elsewhere in the Arbitration Agreement. Thus, PwC implicitly asks the court to find an ambiguity based on PwC's undisclosed subjective intent. Doing so is contrary to New York's rules for contract construction. *See In re DHP Holdings*, 553 B.R. at 27 (noting contract is not made ambiguous by "'ambiguity' [that] emanates not from the language used in the contract but, rather, from a party's subjective perception of its terms.").

Allowing PwC to rely on its undisclosed subjective intent is particularly inappropriate here because PwC was the sole drafter of the Arbitration Agreement and could have included language that would have provided notice of its intent. For example, PwC might have substituted "the Franken Amendment" or "requirements imposed on certain federal contracts" for "federal law" in the clause "unless and until *federal law* no longer prohibits the Firm from mandating arbitration of [Title VII] claims." ECF No. 7-2 at 17 ¶ 1.d.(viii) (emphasis added). There were, moreover, no negotiations leading to creation of the document through which Ashford might have learned PwC's subjective intent. *See generally In re DPH Holdings*, 553 B.R. at 27. Thus, PwC has not shown an ambiguity that supports reading the generic term it chose to use, "federal law," to refer more narrowly to the Franken Amendment, especially as there is no suggestion Ashford (or any other employee) was provided notice of PwC's now-claimed intent. *See In re DPH Holdings*, 552

B.R. at 27 (stating "contract should not be interpreted to produce a result that is . . . contrary to the reasonable expectations of the parties.").

PwC's construction is also problematic because it interprets the Franken Amendment to function differently than its plain language requires. Contrary to the meaning necessary for PwC's construction, the Franken Amendment does not *prohibit employers* from mandating arbitration of Title VII claims. It, instead, *prohibits certain government entities from entering certain types of contracts* with entities that require employees to agree to arbitrate certain claims as a condition of employment (either by entering new contracts mandating arbitration of such claims or enforcing existing provisions). *See* 48 C.F.R. § 222.7402.[12] For this additional reason, PwC's proposed

---

[12] The "Franken Amendment" is embodied in various regulations addressing Department of Defense acquisitions. *See*, *e.g.*, 48 C.F.R. § 222.7402, 222.7403. The provision on which PwC relies, reads in relevant part as follows:

(a) *Departments and agencies are prohibited from using funds* appropriated or otherwise made available by the Fiscal Year 2010 Defense Appropriations Act (Pub.L. 111–118) or subsequent DoD appropriations acts for any contract (including task or delivery orders and bilateral modifications adding new work) in excess of $1 million, *unless the contractor agrees not to—*

(1) *Enter into any agreement with any of its employees or independent contractors that requires, as a condition of employment, that the employee or independent contractor agree to resolve through arbitration—*

(i) *Any claim under title VII of the Civil Rights Act of 1964*;
\* \* \*
(2) Take any action to enforce any provision of an existing agreement with an employee or independent contractor that mandates that the employee or independent contractor resolve through arbitration—

(i) Any claim under title VII of the Civil Rights Act of 1964[.]

48 C.F.R. § 222.7402 (Federal Acquisition Regulations applicable to Department of Defense) (effective June 29, 2011).

13

construction is "contrary to the reasonable expectations" of other parties to the Arbitration Agreement (employees required to sign as a condition of employment).

Even if "federal law" *prohibiting arbitration* is construed to refer to federal law(s) *limiting use of federal funds*, the Franken Amendment was not the only source of such a limitation when Ashford became bound by the Arbitration Agreement in April 2015. Executive Order 13673, which imposed similar restrictions on a broader range of federal contracts, was signed in July 2014 and remained in effect until revoked by Executive Order 13782 in March 2017. The existence of this additional source of similar restrictions combined with PwC's use of generic language in the limitation casts doubt on PwC's claim *it intended* the limitation's reference to "federal law" to refer only to the Franken Amendment, much less any construction that would charge employees who agreed to be bound with such knowledge.

PwC's construction of "federal law" is particularly problematic when viewed from the perspective of a typical employee, who would likely have little or no knowledge of restrictions imposed on federal contractors and, consequently, would have no reason to construe the generic reference to "federal law" to refer to such restrictions. To the contrary, the language chosen by PwC would likely be interpreted by such an employee as indicating the existence of a federal statute, regulation, case law or other authority *prohibiting* employers (or at least PwC and its affiliates and subsidiaries), from mandating arbitration of Title VII claims (rather than requiring employers to agree to such restrictions in order to secure certain contracts). Ashford suggested just such an interpretation by attaching Equal Employment Opportunity Commission ("EEOC") Notice 915.002 (July 10, 1997), to her memorandum in opposition to PwC's Motion to Compel. ECF No. 10-1 at 4-18. While courts have rejected the EEOC's position, that the EEOC has taken the position supports the premise an employee not versed in the law could have reasonably

understood PwC's chosen language to refer to a generally applicable prohibition on mandating arbitration of Title VII claims. *See, e.g., EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (rejecting position taken in EEOC Notice).

The court, therefore, finds PwC's construction of the term "federal law" to refer solely to the Franken Amendment is not a reasonable construction of the provision excluding Title VII claims from mandatory arbitration "unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims." Arbitration Agreement § 1.d.(vii).

**Construction of "unless and until federal law no longer prohibits."** Even if the limitation's reference to "federal law" could be interpreted to refer to the Franken Amendment, the limitation could not reasonably be interpreted to turn on whether PwC is performing work or in a contractual relationship subject to the Franken Amendment. Instead, the language chosen by PwC, that Title VII claims are excluded "unless and until *federal law no longer prohibits* the Firm from mandating arbitration of such claims" suggests the limitation would be triggered by a *change in federal law*. Such a reading gives the clause "the meaning ordinarily ascribed" to the words PwC chose to use and comports with the "reasonable expectations" of employees, who would have agreed to be bound by the Arbitration Agreement without notice of PwC's subjective intent. *See In re DPH Holdings* at 27 (noting rules of construction require words be given "their fair and reasonable meaning[,]" "meanings ordinarily ascribed to them[,]" and "plain meaning" chosen by drafter(s), and "not be interpreted to produce a result that is . . . contrary to the reasonable expectations of the parties"); *see also Currie, McCabe & Assoc, Inc. v. Maher*, 75 A.D.3d 889, 890-91 (3d Dept. N.Y. 2010) (stating court should "examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and

the intention of the parties as manifested thereby. . . . [T]he goal should be a practical construction of the language used so that the reasonable expectations of the parties are realized." (internal quotation marks and citation omitted)).

Notably, PwC acknowledges in its objection memorandum that construing the "unless and until" clause to refer to *a change in federal law* is a reasonable interpretation, though it maintains it was intended to *also* cover situations in which PwC is no longer a party to contracts covered by the Franken Amendment. *See* ECF No. 16 at 3 (stating provision at issue was intended "to accommodate future scenarios in which *either* PwC no longer held covered federal defense contracts *or the Franken Amendment was no longer in force*." (emphasis added)). For reasons explained above, construing the provision to refer to a change in the law gives effect to the plain and ordinary meaning of the words used and leads to a reasonable result. In contrast, the alternative additional meaning proposed by PwC rests on undisclosed intent and leads to a result that, if not absurd, is at least beyond what an employee would reasonably have understood from the language used. *In re DPH Holdings*, 553 B.R. at 27 ("contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties.").

To construe the limitation as dependent on whether PwC is (or at a relevant time was) in a contractual relationship covered by the Franken Amendment is, moreover, fraught with difficulties of application. This is, most critically, because PwC could be in and out of such contracts (or pursuing and not pursing contracts) during periods when discriminatory incidents occurred, during the period between the last discriminatory act and litigation, and even while litigation was pending. While application of the limitation might be determined based solely on PwC's status on the day an action is filed, other arguments for critical dates are possible, raising significant uncertainties

in how the limitation would be applied. Moreover, the facts necessary to know when the limitation on the express exclusion of Title VII claims from mandatory arbitration applies would likely be known only to PwC. In contrast, construction of "unless and until federal law no longer prohibits . . . mandatory arbitration" to turn on whether the *underlying federal law* has changed would lead to a predictable result based on publicly available information: the limitation would be triggered only if the law changed before the Title VII claim at issue was filed.

      **PwC's Factual Premise.** Even if the court were to accept PwC's construction of the limitation (to refer to the Franken Amendment and be triggered by the absence of contracts subject to that amendment), it would not find PwC's proffered Declaration sufficient to invoke it. This is because the Arbitration Agreement defines "Firm" to include not only PwC, but also "any of its subsidiaries or affiliates based in the United States." Thus, by defining the term within the document, PwC vested it with a "definite and precise meaning" that requires the limiting language be read as "unless and until federal law no longer prohibits [PwC and/or any of its subsidiaries and affiliates based in the United States] from mandating arbitration of [Title VII] claims." *See In re DPH Holdings*, 553 B.R. at 26 (stating "contract should be construed so as to give full meaning and effect to all of its provisions" and there is no ambiguity where "contract language has a definite and precise meaning"); *id.* at 27 (stating "courts may not by construction add or excise terms").

      PwC relies on a Declaration *PwC* has not performed work (or been party to a contract) covered by the Franken Amendment since before Plaintiff was hired to the date of the Declaration. It offers no evidence as to whether any of PwC's subsidiaries or affiliates in the United States performed such work or, more accurately, whether any subsidiary or affiliate was a party to a contract subject to the Franken Amendment during the relevant timeframe. Thus, even if the limitation on the express exclusion of Title VII claims from mandatory arbitration could be

construed as PwC argues it should be construed, PwC has failed to proffer evidence necessary to establish the limitation was triggered.

For these reasons, the court finds the limitation was not triggered. This leaves the exclusion of Title VII claims from the definition of Covered Claims and, consequently, from mandatory arbitration, in force.

**Unconscionability.** In the alternative, the court agrees with the Report's conclusion PwC's proposed construction, if accepted, would be both procedurally and substantively unconscionable. As explained in more detail below, the procedural prong is implicated because the Arbitration Agreement does not give fair notice of the circumstances PwC now argues trigger the limitation on the express exclusion of Title VII claims from mandatory arbitration. The substantive prong is implicated because employees (unlike the employer) would rarely be able to discern when the limitation was in play.

**Procedural Unconscionability.** Under New York law, "[p]rocedural unconscionability examines the contract-formation process and focuses on the size and commercial setting of the transaction, whether deceptive or high-pressure tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was a disparity in bargaining power." *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y 2017) (quoted in ECF No. 16 at 10) (internal marks omitted). PwC argues these factors are not satisfied because PWC did not engage in deceptive or high-pressure tactics, the limiting language was not in fine print, and the Arbitration Agreement was conspicuous. This argument misses the critical point. As explained above, the Arbitration Agreement clearly and expressly excludes Title VII claims from coverage subject to a written limitation. What is "hidden" is PwC's construction based on (1) its subjective intent; and (2) facts known only to PwC. This is demonstrated in

Ashford's case by PwC's claim the limitation was *already triggered* at the time PWC required her to accept an Arbitration Agreement that, on its face, appeared to exclude Title VII claims from the definition of "Covered Claims."  This is at least as deceptive as hidden language or fine print because it affirmatively leads reasonable employees to believe a significant class of claims are excluded from mandatory arbitration when PwC secretly intends to argue they are not.  Moreover, while PwC argues Ashford is highly educated, there is no suggestion she has special expertise in the area of employment law or government contracts that might have led her to understand, or at least question, PwC's intent.  Finally, PwC cannot argue there is no disparity in bargaining power.  Thus, multiple factors support a finding of procedural unconscionability *if the limiting language is given the construction proposed by PwC*.

**Substantive Unconscionability.**  Under New York law, substantive unconscionability "focuses on the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged."  ECF No. 16 at 8 (quoting *Application of Whitehaven, S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 351 (S.D.N.Y. 2014), *aff'd*, 633 F. App'x 544 (2d Cir. 2015) (internal marks omitted)).  If interpreted as PwC argues it intended the limitation, PwC would be both the only party to the contract likely to know if and when the limitation applied and, to a large measure, in control of when the limitation applied (by not pursuing federal contracts).  This unilateral knowledge and control is exacerbated by the absence of notice of the intended meaning as explained above.  Ashford's particular circumstances demonstrate the reality of these concerns as PwC argues the limitation on the Title VII exclusion *never* applied to her, yet PwC induced Ashford to sign the Arbitration Agreement without notice that the significant exclusion of Title VII claims from mandatory arbitration was not, in fact, in force.

Another substantive difficulty as PWC construes the limitation is determining when and how it would apply if PwC or one or more of its subsidiaries and affiliates were parties to contracts subject to the Franken Amendment during some portions of an employee's tenure but not others. PwC would be unreasonably favored by the provision because of procedural obstacles facing an employee seeking to determine whether his or her claim was subject to arbitration.

Accordingly, the court finds the limiting language unconscionable for reasons stated above and in the Report.[13] The issue then becomes the proper remedy.

**Remedy for Unconscionability.** PwC asserts the proper remedy for unconscionability is to blue pencil the offending provision and identifies the offending provision as the entirety of the

---

[13] After briefing was complete, PwC filed a notice of supplemental authority, attaching a recent decision from the Southern District of New York. ECF No. 22 (attaching order compelling arbitration in *Chatziplis v. PricewaterhouseCoopers LLP*, C.A. No. 17-CIV-4109-ER (S.D.N.Y. July 6, 2018)). PwC asserts the arbitration agreement at issue in *Chatziplis* is "virtually identical" to the Arbitration Agreement at issue here and correctly notes the court held the arbitration agreement was not unconscionable. The discussion of unconscionability in *Chatziplis* is, however, of no moment here because it addresses unconscionability of the arbitration agreement as a whole, focusing on whether the employee had adequate time to review the agreement and fairness of the arbitration procedures. Slip. Op. at 5-9. This court does not hold otherwise and, in fact, finds the Arbitration Agreement enforceable as to Ashford's Section 1981 claim.

The unconscionability arguments at issue here address whether the *limitation on the Title VII exclusion* is unconscionable. *Chatziplis* does not address this concern. Indeed, the opinion's only discussion of Title VII is in a section noting Chatziplis failed to assert a Title VII claim despite three opportunities do so. The court then states, "[e]ven if Chatziplis can make allegations that would support a Title VII claim, and those issues are not time barred, there is no reason why Chatziplis cannot raise these issues in arbitration." *Id.* A footnote to this sentence (1) quotes the same language limiting the Title VII exclusion at issue here, (2) states the "Second Circuit does not prohibit employers from mandating arbitration of Title VII claims," (3) notes Chatziplis pointed to federal regulations limiting DoD's ability to enter contracts with employers that require arbitration of Title VII claims, and (4) accepts PwC's proffered evidence it "has not been a party to a relevant [DoD] contract." Slip. Op. at 10, n.9. To the extent that footnote might suggest any different contract construction or finding as to unconscionability than reflected in this Order, the undersigned finds the discussion too cursory to be persuasive.

exclusion of Title VII claims from mandatory arbitration. Thus, PwC argues the proper remedy is to delete the Title VII exclusion, leading to the same result as would enforcing the clause based on PwC's proposed construction.

While the court agrees blue penciling would be the proper remedy under its alternative ruling, it disagrees as to what should be excised. The offending provision is the limiting language, not the Title VII exclusion as a whole. Thus, were the court to accept PwC's proposed construction, it would delete the language "unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims." What would remain would expressly exclude "claims that arise under Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination on the basis of race, color, religion, sex and national origin[.]"

## CONCLUSION

For the reasons set forth above, the court accepts the recommendation of the Report based on the reasoning therein and for additional reasons explained above. The court, therefore, finds Ashford is bound by the Arbitration Agreement, which requires arbitration of her Section 1981 claim and dismisses the second cause of action to the extent pursued under Section 1981. Dismissal is without prejudice to Ashford's right to pursue her Section 1981 claim in arbitration.

While Ashford is bound by the Arbitration Agreement, it does not require arbitration of Title VII claims because PwC has not shown the limitation on exclusion of Title VII claims from mandatory arbitration was triggered. The court, therefore, grants the Motion to Compel arbitration of Ashford's Section 1981 claim and denies the Motion to Compel arbitration as to both causes of action to the extent pursued under Title VII. The court will, however, stay this action as to any Title VII claim until the arbitration is concluded.

The parties are directed to file a status report no later than **September 20, 2018**, addressing whether arbitration has been commenced or Ashford has made an earlier affirmative election not to pursue recovery under Section 1981. If Ashford institutes an arbitration proceeding within that period, the stay will continue until arbitration is concluded. If Ashford fails to institute arbitration proceedings within that time, she will be deemed to have abandoned recovery under Section 1981 and the stay will be lifted. The parties shall inform the court promptly of any disposition of the arbitration proceeding. In the interim, Defendant is directed to provide a report as to the status of arbitration no later than **January 18, 2019**, and every ninety days thereafter.

      **IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
July 18, 2018