**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1958

SHANNON ASHFORD,

    Plaintiff - Appellee,

  v.

PRICEWATERHOUSECOOPERS LLP,

    Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Cameron McGowan Currie, Senior District Judge. (3:18-cv-00904-CMC-SVH)

Argued: January 30, 2020           Decided: April 3, 2020

Before NIEMEYER, QUATTLEBAUM, and RUSHING, Circuit Judges.

Reversed and remanded with instructions by published opinion. Judge Quattlebaum wrote the opinion in which Judge Niemeyer and Judge Rushing joined.

**ARGUED:** Helgi C. Walker, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. John Charles Ormond, Jr., ORMOND DUNN, Columbia, South Carolina, for Appellee. **ON BRIEF:** Stacy K. Wood, PARKER POE ADAMS & BERNSTEIN LLP, Charlotte, North Carolina; Jason C. Schwartz, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant.

QUATTLEBAUM, Circuit Judge:

The Federal Arbitration Act expresses a strong policy in favor of arbitration. Based on that, the Supreme Court and our Court have consistently held that contractual provisions capable of being reasonably read to call for arbitration should be construed in favor of arbitration. Following our precedent, we construe the arbitration provision in the employment agreement between Shannon Ashford and PricewaterhouseCoopers, LLP ("PwC") to require arbitration of Ashford's Title VII claims. We also conclude that the arbitration provision was neither procedurally nor substantively unconscionable. Therefore, we reverse the district court's denial of PwC's motion to compel arbitration of Ashford's Title VII claims and remand the case with instructions to compel.

I.

PwC hired Ashford in March 2015 as an associate in its Columbia, South Carolina advisory group. To confirm her employment, Ashford electronically executed an employment agreement containing arbitration provisions.[1]

---

[1] An early example of an arbitration provision in the United States comes from President George Washington. In his will, Washington provided "all disputes (if unhappily any should arise) shall be decided by three impartial and intelligent men known for their probity and good understanding" who "shall, unfettered by Law, or legal constructions, declare their sense of the Testators intention; and such decision is, to all intents and purposes to be as binding on the Parties as if it had been given in the Supreme Court of the United States." Washington's Will, *reprinted in The Writings of George Washington*, 294 (J. Fitzpatrick ed. 1938).

The agreement required arbitration of all "Covered Claims," including claims under "federal, state and local laws regarding employment . . . and any other claims arising under any federal, state or local statute[,] ordinance, regulation, public policy or common law." J.A. 45. It expressly excluded, however, "[c]laims that arise under Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination on the basis of race, color, religion, sex, and national origin, unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims." J.A. 46. The agreement applied to the "Firm," defined to include "[PwC] and/or any of its subsidiaries or affiliates based in the United States." J.A. 45.

Later, after being passed over for several promotions, Ashford sued PwC in South Carolina state court alleging race discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and retaliation under Title VII. PwC then removed the case to federal court and moved to compel arbitration, and to stay or dismiss the proceedings, in accordance with the terms of Ashford's employment agreement.

In support of its motion, PwC argued that the Title VII exclusion in Ashford's agreement did not apply to her claims because federal law no longer prohibited PwC from mandating arbitration of Title VII claims. According to PwC, at the time the agreement's arbitration provisions were drafted, PwC was subject to the Franken Amendment to the Defense Appropriations Act for Fiscal Year 2010—which bars certain defense contractors from mandating arbitration of Title VII claims in employment contracts. *See* 48 C.F.R. §§ 222.7402(a)(1)(i), 252.222–7006, 222.7400–7405. However, when Ashford's employment

3

began, PwC no longer performed the types of work that invoked the prohibition on mandatory arbitration and, thus, was no longer subject to the Amendment.[2]

The district court granted PwC's motion as to Ashford's Section 1981 claim but denied it as to her Title VII claims. Applying New York law pursuant to the agreement's choice of law provision, the district court concluded that the Title VII exclusion remained in effect. The district court concluded that the "unless and until federal law no longer prohibits" language in the Title VII exclusion required a change of federal law. Since the law did not change, the district court reasoned her Title VII claims were still excluded from the mandatory arbitration provision. It further found that the agreement's definition of "Firm" included PwC *and* any of its subsidiaries or affiliates. Based on this language, the district court determined that PwC was required to establish that neither PwC nor any of its subsidiaries or affiliates were prohibited from mandating the arbitration of Title VII claims by federal law. But since PwC only presented evidence that it was not prohibited from mandating the arbitration of Title VII claims, the court ruled that PwC failed to establish that the Title VII exclusion did not apply. Finally, the district court alternatively concluded that if the Title VII exclusion ceased to apply because of a change in facts, rather than a change of law, it was procedurally and substantively unconscionable.

---

[2] Through a declaration, a PwC employee testified that PwC has not been a party to any non-commercial contract with the U.S. Department of Defense in excess of one million dollars during the time relevant to this litigation. Ashford does not dispute this issue.

4

PwC timely appealed the district court's order.[3] We have jurisdiction over this interlocutory appeal pursuant to 9 U.S.C. § 16.

II.

PwC's appeal requires us to consider two primary issues. First, does Ashford's employment agreement exclude her Title VII claims from the mandatory arbitration requirement? If so, that ends our inquiry and the judgment of the district court should be affirmed. But if not, we must then consider whether the Title VII exclusion is unconscionable. We address each of these issues in turn.

A.

We first consider whether the employment agreement excludes Ashford's Title VII claims from arbitration. In doing so, we "review de novo the enforceability of an arbitration provision, and apply a strong federal policy in favor of enforcing arbitration agreements." *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 333 (4th Cir. 2017) (internal quotation marks omitted). Congress enacted the Federal Arbitration Act ("FAA") to curb "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA requires courts to "rigorously . . . enforce arbitration agreements according to their terms . . . ." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1620 (2018) (internal quotation marks omitted). The FAA's policy of favoring

---

[3] Neither party objected to the district court's order compelling the arbitration of Ashford's Section 1981 claim.

5

arbitration augments "ordinary rules of contract interpretation," *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001), and requires all ambiguities to be resolved in favor of arbitration. *Wash. Square Secs., Inc. v. Aune*, 385 F.3d 432, 436 (4th Cir. 2004). It applies with equal force to employment agreements providing for the arbitration of discrimination claims brought under Title VII of the Civil Rights Act. *Murray v. United Food and Commercial Workers Int'l. Union*, 289 F.3d 297, 301 (4th Cir. 2002).

1.

With that background in mind, we turn to PwC's first argument. PwC insists the agreement requires arbitration of Ashford's Title VII claims if either the law changed to allow PwC to arbitrate Title VII claims or facts changed so that any federal prohibition of mandatory arbitration of such claims no longer applied to PwC. In contrast, Ashford contends the agreement requires arbitration of Title VII claims only in the event of a change of law. It is undisputed that no such change in law has occurred. Therefore, for PwC to prevail, the agreement must allow arbitration of Title VII claims if facts change so that the prohibition of mandatory arbitration of Title VII claims does not apply to PwC.

Importantly, under precedent from the Supreme Court and this Court, we must read the Title VII exclusion in favor of arbitration if we can reasonably do so.

> [T]here is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT&T Techs., Inc. v. Commc'ns Workers of America,* 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83 (1960)); *see*

*also Aune*, 385 F.3d at 436. Thus, we ask if the agreement can be read to permit arbitration here.

We conclude that it can. The key language from the agreement is "unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims." Critically, this language does not say that the only way PwC can mandate arbitration of Title VII claims is if federal law no longer prohibits PwC from mandating arbitration due to a change in law. Instead, it looks more broadly as to whether PwC is no longer prohibited from mandating arbitration of Title VII claims, regardless of the reason.

Further, for federal law to prohibit PwC from mandating arbitration of Title VII claims, there must be both a legal prohibition against mandating arbitration and facts tying PwC to that prohibition. The pertinent legal prohibition is the Franken Amendment to the Defense Appropriations Act for Fiscal Year 2010. That amendment bars defense contractors from mandating arbitration of Title VII employment claims. But the prohibition only applied to those engaged in certain defense contracting. At the time the agreement was drafted, PwC performed the type of defense contracting work that subjected it to the Franken Amendment. Together, the existence of the prohibition—the law—and PwC's defense contracting work—the facts—combined to prohibit PwC from mandating arbitration of Title VII claims.

And since both the law and the facts were required to prohibit PwC from mandating arbitration of Title VII claims, a change in either could result in federal law "no longer prohibit[ing] PwC from mandating arbitration" of such claims. Here it was a change in the relevant facts. PwC ceased performing the type of defense contracting work that subjected

7

it to the Franken Amendment. As a result, the federal law prohibiting mandatory arbitration of such claims no longer applied to PwC.

The agreement can be reasonably read to cover a change in facts, like the change that occurred here, that results in federal law no longer prohibiting PwC from mandating arbitration of Title VII claims. While the language of the agreement at issue is admittedly not a model of clarity, we do not review it with a clean slate. The FAA and our precedent tip the scales decidedly in favor of arbitration. Since the reading advanced by PwC is a reasonable interpretation of the language agreed to by the parties, we must construe the agreement to permit the arbitration of Ashford's Title VII claims.

2.

Next, PwC argues it established that the "Firm" as referred to in the agreement was no longer prohibited from mandating arbitration of Title VII claims. Once again, the agreement defined the "Firm" to include "[PwC] and/or any of its subsidiaries or affiliates based in the United States." J.A. 45. The resolution of this issue centers on whether PwC was permitted to show that only PwC was no longer prohibited from mandating arbitration of Title VII claims or whether PwC was required to show that PwC and all its affiliates and subsidiaries were no longer prohibited. The inclusion of "or" in the definition of the "Firm" is critical. By using "or," the parties agreed Title VII claims were subject to arbitration if PwC *or* any of its subsidiaries or affiliates were no longer prohibited from mandating arbitration of Title VII claims. Ashford sued PwC, her employer. Therefore, we need only determine if it is prohibited by federal law from mandating arbitration of Title VII claims. Since, as set forth above, it no longer is, the Title VII exclusion does not apply.

8

In sum, the FAA's policy of favoring arbitration governs our resolution of the applicability of the Title VII exclusion. And that result is neither harsh nor unfair. After all, Ashford did not waive any substantive rights by agreeing to arbitrate her Title VII claims. *See Murray*, 289 F.3d at 301 (internal quotation marks omitted). She merely agreed to present her Title VII claims to an arbitrator rather than a judge or jury. She will still have an opportunity to present her case and obtain relief if PwC is found to have discriminated against her.

B.

Having determined that the Title VII exclusion does not prohibit the arbitration of Ashford's Title VII claims, we must next consider whether that provision was unconscionable. To address this issue, we begin with a review of the applicable state's unconscionability law—which the parties agree is New York. "An unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (internal quotation marks omitted). Unconscionability requires a showing that the contract was both procedurally and substantively unconscionable when made. *Id*. The procedural element requires us to examine the "contract formation process and the alleged lack of meaningful choice." *Id*. at 828. "The focus is on such matters as the size and commercial setting of the transaction . . . whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party

9

claiming unconscionability, and whether there was disparity in bargaining power." *Id*. (internal citation omitted).

The record does not support a conclusion of procedural unconscionability. Ashford's argument to the contrary is primarily based on her contention that only PwC would know if the Franken Amendment no longer applied to PwC at the time of any Title VII claim. According to Ashford, since such information is solely in the possession of PwC, the applicability of the Title VII exclusion was "at least as deceptive as hidden language or fine print." J.A. 177. But this contention, even if true, relates to the substance of the agreement, not the contract formation process or the lack of meaningful choice. Accordingly, Ashford's lack of knowledge about the applicability of the Title VII exclusion does not establish procedural unconscionability.

Ashford's other argument in favor of procedural unconscionability is that she lacked equal bargaining power with PwC. However, unequal bargaining power alone does not render a contract procedurally unconscionable. Indeed, if unequal bargaining power were enough to create procedural unconscionability, virtually all agreements requiring employees to arbitrate would be unconscionable as employers generally have greater bargaining power than potential employees. Plainly, that is not the law.

And Ashford is not your run of the mill employee. She is a professional consultant with one of the largest firms in the country with degrees from Stanford University, Columbia University and Harvard University. Both her job duties and impressive educational background cut against Ashford's procedural unconscionability argument.

10

While the lack of procedural unconscionability is fatal to Ashford's argument, substantive unconscionability is also lacking. Substantive unconscionability focuses on "the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged[.]" *Id.* at 829. "[T]here have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Id.* But this is not such a contract. Importantly, arbitration agreements in employment contracts that bind both parties equally are not per se unconscionable under New York law. *See Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 342 (W.D.N.Y. 2017); *Sablosky v. Edward S. Gordon Co., Inc.*, 535 N.E.2d 643, 647 (1989).

Faced with this uphill battle, Ashford repeats the argument she made concerning procedural unconscionability. She contends that, under PwC's reading of the Title VII exclusion, only PwC would know whether the facts allowed arbitration. Putting aside that nothing in the agreement prohibits her from asking PwC about whether the exclusion applies, we agree the relevant information would likely be in PwC's hands. But we fail to see how that renders the Title VII exclusion substantively unconscionable. The terms of the agreement indicate that, at a minimum, there was a risk that any Title VII claim might have to be arbitrated. Aware of that risk, Ashford had the option to work for PwC or seek employment elsewhere. But after agreeing to work for PwC and executing the company's employment agreement, she cannot now avoid the agreement's arbitration and Title VII exclusion provisions. Ashford's argument that these provisions are unconscionable is not supported by the record.

III.

For these reasons, Ashford's Title VII claims are subject to arbitration. The district court's denial of PwC's motion to compel arbitration of Ashford's Title VII claims is reversed. We remand this case to the district court with instructions to dismiss the complaint and compel arbitration.

*REVERSED AND REMANDED WITH INSTRUCTIONS*